IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:17-CV-229-FL

| | | |
|---|---|---|
| DANTE MURPHY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| COUNTY OF NEW HANOVER, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on defendant's motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Federal Rules of Civil Procedure 12(b)(6). (DE 24). Plaintiff responded in opposition to the motion, and defendant timely replied. In this posture, the issues raised are ripe for ruling. For the reasons that follow, defendant's motion is granted.

**STATEMENT OF THE CASE**

Plaintiff, through counsel, initiated this action on December 1, 2017. On May 24, 2018, plaintiff filed an amended complaint. Plaintiff asserts defendant denied him reasonable accommodations, discriminated against him by ultimately discharging him on the basis of race and disability, retaliated against him on the basis of race, and unlawfully discharged him for responding to a subpoena, all in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112; Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq.; the Civil Rights Act of 1866 ("CRA"), 42 U.S.C. § 1981; the North Carolina Equal Employment Practices Act ("NCEEPA"), N.C. Gen. Stat. §§ 143–422.1 et seq.; and North Carolina public policy. Plaintiff

seeks lost wages, lost benefits, other economic losses, punitive damages, damages for emotional distress, reasonable attorneys' fees, and costs.

Defendant filed the instant motion to dismiss on July 27, 2018, arguing that plaintiff's amended complaint must be dismissed in its entirety for failure to state a claim. Plaintiff responds in opposition, arguing that the facts as alleged provide a plausible basis for relief under each cause of action.

**STATEMENT OF THE FACTS**

The facts alleged in the complaint[1] can be summarized as follows. Plaintiff is a 47 year old African-American male who was hired by defendant as a social worker in the foster care unit at New Hanover County Department of Social Services (Compl. ¶¶ 7, 9). Plaintiff was diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD") several years before working for defendant, and his ADHD substantially limits his life activities. (Id. ¶ 30). Prior to beginning his employment with defendant, plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging race discrimination against his former employer. (Id. ¶ 12).

Plaintiff's employment with defendant began on July 5, 2016. (Id. ¶ 9). On July 6, 2016, plaintiff informed his supervisor, Holly Royals ("Royals") that he had been subpoenaed to appear in Cleveland County on July 14, 2016, to testify in a criminal court proceeding. (Id. ¶ 13). Royals opposed his compliance with the subpoena and requested plaintiff try to get out of testifying because it would interfere with his work for defendant. (Id. ¶ 14). On July 12, 2016, plaintiff was informed the proceeding for which he had been subpoenaed had been continued. (Id. ¶ 15).

On August 29, 2016, plaintiff emailed defendant's human resources department, informing

---

[1] Hereinafter, all references to the "complaint" in the text and to "Compl." in citations are to the amended complaint filed May 24, 2018, (DE 19), unless otherwise specified.

them of his ADHD and asking that he be provided a reasonable accommodation. (Id. ¶ 32). On September 2, 2016, plaintiff met with Cheryl Knips ("Knips"), a human resources specialist employed by defendant, to discuss possible accommodations. (Id. ¶¶ 21, 35). On September 12, 2016, Knips informed plaintiff that she was meeting with defendant's ADA compliance officer to discuss accommodation request procedures and that she would be in touch regarding next steps. (Id. ¶ 36). On September 16, 2016, Knips sent plaintiff another email referencing enclosed forms that he needed to complete to request an accommodation; however, only Plaintiff's job description was attached. (Id. ¶ 37). Plaintiff sent a follow up email to Knips asking of there should have been another attachment in the email. (Id. ¶ 38).

On October 3, 2016, Royals and her supervisor, Brian Bocnuk ("Bocnuk") advised plaintiff that a recommendation had been made to Michelle Winstead, director of New Hanover County Department of Social Services, to terminate Plaintiff's employment. (Id. ¶¶ 10–11, 51). Plaintiff heard nothing more about the proposed termination until he made an email inquiry about the status on October 18, 2016. (Id. ¶ 52).

On October 4, 2016, Knips responded on October 4, 2016, and attached the reasonable accommodation request packet and a copy of Plaintiff's job description to give to his doctor to use in determining a reasonable accommodation. (Id. ¶ 39). On October 5, 2016, plaintiff suggested to Royals and Wanda Marino ("Marino"), assistant director of New Hanover County Department of Social Services, that he be transferred to an after-hours position in child protective services as an accommodation, in part because there is less distraction in that position. (Id. ¶¶ 10, 40). During plaintiff's tenure, he observed that transferring employees to different positions internally was customary practice and plaintiff alleges that similarly situated Caucasian social workers who requested transfers had them routinely granted. (Id. ¶ 41).

3

In the meantime, plaintiff received a second subpoena, issued September 26, 2016, requiring him to testify either the week of October 10, 2016, or October 24, 2016. (Id. ¶¶ 16–17). Plaintiff followed proper procedure by informing Royals of the second subpoena, and Royals sent plaintiff an email on October 5, 2016, with suggestions on how he could get out of testifying, such as by submitting an affidavit instead of appearing to testify. (Id. ¶¶ 18, 19). Plaintiff responded he did not feel comfortable pushing back against the subpoena, and on October 6, 2016, complained to Knips that Royals was opposing a lawful subpoena. (Id. ¶¶ 20–21).

On or about October 10, 2016, Plaintiff was informed of the plans to provide him with an accommodation in the form of a headset and an office change. (Id. ¶ 45). These accommodations went into effect October 18, 2016. (Id. ¶ 46). Plaintiff alleges that the accommodations were ineffective, and that he informed defendant the accommodations were ineffective. (Id. ¶¶ 47–50).

Plaintiff was subsequently out of work pursuant to the subpoena from October 25 and October 26, 2016. (Id. ¶ 26). Following plaintiff's compliance with the subpoenas, plaintiff was allegedly given work assignments outside of his job description and held to higher performance standards. (Id. ¶¶ 54–55).

On or about November 1, 2016, plaintiff's former employer sent defendant a request for plaintiff's employment file as a part of their discovery efforts in the pending employment discrimination action filed by plaintiff, and on November 12, 2016, issued a subpoena for a copy of plaintiff's employment application. (Id. ¶ 27). Defendant learned of plaintiff's pending employment discrimination lawsuit due to his former employer's subpoena and request for documents. (Id. ¶ 29).

On December 6, 2016, Plaintiff was called into a meeting with Winstead and informed that his employment was being terminated due to his job performance. (Id. ¶ 57). Winstead also sent Plaintiff a letter dated December 6, 2016, stating that plaintiff was being terminated due to failure

to meet performance expectations. (Id. ¶ 58). Plaintiff asserts that, at all times relevant to the complaint, he performed his job in a satisfactory manner. (Id. ¶ 60).

Plaintiff filed a charge with the EEOC on March 23, 2017. (Id. ¶ 63). Plaintiff was issued a Notice of Right to Sue letter dated August 30, 2017. (Id. ¶ 64).

## COURT'S DISCUSSION

A. Standard of Review

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

B. Analysis

The court addresses plaintiff's allegation of race discrimination, retaliation, disability discrimination, failure to accommodate, and discharge in violation of public policy in turn.

1. Race and Disability Discrimination

Plaintiff alleges defendant unlawfully discriminated against him on the basis of race and disability by terminating him in violation of Title VII, the CRA, and the NCEEPA. (Compl. ¶¶ 68–69, 79, 84).

Title VII provides that it is unlawful to "to discharge any individual, or otherwise to

5

discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). The CRA provides "[a]ll persons . . . shall have the same right . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981. Finally, the NCEEPA provides "[i]t is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race, religion, color, national origin, age, sex or handicap." N.C. Gen. Stat. § 143-422.2; see also Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir.2000) (observing the NCEEPA has been used to support common law wrongful discharge claims).

Absent direct evidence, the elements of a prima facie case of discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class. Coleman v. Maryland Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd sub nom. Coleman v. Court of Appeals of Maryland, 566 U.S. 30 (2012).[2] "In determining whether an employee was performing at a level that met the employees legitimate expectations, it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." King v. Rumsfeld, 328 F.3d 145, 149 (4th Cir. 2003). Both the CRA and NCEEPA require the same showing to prove disparate treatment as Title VII. See Bryant v. Aiken Reg'l Med. Centers Inc., 333 F.3d 536, 544–45 (4th Cir. 2003); Lowery v. Circuit City Stores, Inc., 206 F.3d 431, 440–41 (4th Cir. 2000); N. Carolina Dep't of Correction v. Gibson, 308 N.C. 131, 136 (1983).

---

[2]The court notes that the same standards apply to disability discrimination. See Haulbrook v. Michelin N. Am., 252 F.3d 696, 702 (4th Cir. 2001).

6

Here, plaintiff alleges that "[a]t all times relevant to this complaint, Plaintiff performed his job in a satisfactory manner." (Compl. ¶ 60). However, the court rejects this assertion as a legal conclusion couched as a fact. See Nemet Chevrolet, 591 F.3d at 255. Plaintiff's complaint discloses that on October 3, 2016, plaintiff was advised that Royals and Bocnuk had recommended to Winstead that defendant terminate plaintiff's employment. (Compl. ¶ 51). On December 6, 2016, plaintiff was terminated by defendant "due to failure to meet performance expectations." (Id. ¶¶ 57–58). Plaintiff's complaint does not allege any facts which show he was performing his job in a satisfactory manner. Therefore, his complaint fails to state a claim as to race discrimination.

Plaintiff argues that, because he stated defendant's reason for discharging him was pretextual, he effectively stated that his job performance was satisfactory. (Pl. Mem. Opp. (DE 27) at 8 (citing Compl. ¶ 68)). However, the allegation of pretext is also a legal conclusion, which the court does not accept. See Iqbal, 556 U.S. at 663. Moreover, plaintiff's reliance on Conley v. Gibson, 355 U.S. 41 (1957), is misplaced because the notice pleading standards under Conley have since been abrogated by Twombly, 550 U.S. at 555, and Iqbal, 556 U.S. at 663. Since plaintiff has failed to allege any facts plausibly showing that his job performance was satisfactory, the court finds that he has not sustained his race discrimination claims under Title VII, the CRA, or the NCEEPA. Therefore, plaintiff's claims are dismissed for failure to state a claim. The court does not reach the question of whether plaintiff's claims raise a reasonable inference of unlawful race or disability discrimination.

2. Retaliation

Plaintiff alleges that defendant unlawfully retaliated against him on the basis of race in violation of Title VII. (Compl. ¶ 117). Specifically, plaintiff alleges that, had it not been for plaintiff's prior EEOC activity and or litigation regarding alleged employment discrimination,

Defendant would have allowed him to transfer positions, would not have held him to higher performance standards than other social workers, and would not have terminated Plaintiff's employment. (Id. ¶ 116).

Title VII prohibits employers from "discriminat[ing] against any of [their] employees ... because [the employees] ha[ve] opposed any practice made an unlawful employment practice by [Title VII], or because [the employees] ha[ve] ... participated in any manner in an investigation" under Title VII. 42 U.S.C. § 2000e–3(a). The elements of a prima facie retaliation claim under Title VII are: "(1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action." Coleman, 626 F.3d at 190 (citing Mackey v. Shalala, 360 F.3d 463, 469 (4th Cir.2004)). "Title VII retaliation claims must be proved according to traditional principles of but-for causation . . . ." Univ. of Texas Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 360 (2013).

Here, plaintiff alleges that he was engaged in a protected activity, namely participating in a litigation proceeding involving allegations of employment discrimination. (Compl. ¶¶ 12, 27, 29). Plaintiff was also discharged on December 6, 2016. (Id. ¶¶ 57–58). However, plaintiff fails to establish a causal connection between his being terminated and his lawsuit against his former employer. Royals and Bocnuk recommended to Winstead that plaintiff be terminated on October 3, 2016. (Id. ¶ 51). Plaintiff alleges that defendant became aware of his lawsuit against his former employer due to subpoenas sent November 1, 2016, and November 12, 2016. (Id. ¶¶ 27, 29). Therefore, plaintiff fails to state a claim that defendant retaliated against him by terminating him on December 6, 2016.

Plaintiff argues that he has alleged a causal connection showing retaliation, citing the "two-

week span"³ between defendant's knowledge of plaintiff's protected activity and his termination on December 6, 2016. (Pl. Mem. Opp. (DE 27) at 11). The court rejects this argument because, as stated above, Royals and Bocnuk recommended plaintiff's termination on October 3, 2016. (Id. ¶ 51). Even if the court were to credit plaintiff's argument and assume that defendant's awareness of plaintiff's employment discrimination lawsuit played some part in plaintiff's termination, at best the complaint discloses mixed motives for terminating plaintiff. However, plaintiff fails to sustain his burden because the causal connection between plaintiff's protected activity and his discharge must be a "but for" cause of his termination. See Nassar, 570 U.S. at 360. Consequently, plaintiff's retaliation claim must be dismissed for failure to state a claim.

3. Failure to Accommodate

Next, plaintiff claims that defendant discriminated because of her disability by failing to reasonably accommodate his ADHD as required by the ADA.

The ADA prohibits employers from "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(5)(A). In order to successfully state a failure to accommodate claim, plaintiff must show "(1) that he was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position; and (4) that the employer refused to make such accommodations." Wilson v. Dollar Gen. Corp., 717 F.3d 337, 345 (4th Cir. 2013) (internal

---

³The court notes that the difference between November 12, 2016, and December 6, 2016, is closer to three and a half weeks.

quotations omitted). When evaluating the third element of a failure to accommodate claim, the court considers "[f]irst, was the specific accommodation requested by [plaintiff] reasonable? Second, had [defendant] granted the accommodation, could [plaintiff] perform the essential functions of the position?" Jacobs v. N.C. Admin. Office of the Courts, 780 F.3d 562, 580 (4th Cir. 2015).

Reasonable accommodations may include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111. "An employer may reasonably accommodate an employee without providing the exact accommodation that the employee requested. Rather, the employer may provide an alternative reasonable accommodation." Reyazuddin v. Montgomery Cty., Maryland, 789 F.3d 407, 415 (4th Cir. 2015). Nonetheless, "a reasonable accommodation should provide a meaningful equal employment opportunity." Id. at 416.

Here, defendant attempted to accommodate plaintiff's ADHD by moving him to a different office and providing him with a noise cancelling headset to assist in avoiding distraction. (Compl. ¶ 46). Plaintiff alleges that such accommodations were not reasonable because "being so close to another coworker in a small space failed to adequately eliminate distraction to the point that he was unable to fully concentrate on his job duties. Furthermore, the headset did not fit and did not adequately cancel outside noise, which did not effectively eliminate distraction." (Id. ¶ 49). Finally, plaintiff alleges that he "informed defendant that the provided accommodations were ineffective but no other accommodations were provided." (Id. ¶ 50). Plaintiff suggests that other reasonable accommodations were available, such as "a private office, a noise-cancelling headset that fit properly, ability to work from home, and/or a transfer to an after-hours position." (Id.).

At the outset, the court notes that plaintiff's only specific accommodation that he requested was to be "transferred to an after-hours position in child protective services." (Id. ¶ 40). However, the position plaintiff requested "required the applicant to have a Master Social Work degree," which plaintiff does not allege that he has. (Id. ¶¶ 41–42). Since plaintiff's complaint does not allege he has the appropriate qualifications listed for the job at the time that he requested the accommodation, the request was unreasonable. See Jiminez v. Mary Washington Coll., 57 F.3d 369, 383 (4th Cir. 1995) ("A defendant's requirements with respect to a Title VII plaintiff's academic degree does not constitute invidious discrimination.").

In addition, plaintiff's complaint fails to state a claim because he does not allege that he requested any specific accommodations after he informed defendant that the already provided accommodations were ineffective. See Martinson v. Kinney Shoe Corp., 104 F.3d 683, 687 (4th Cir. 1997). Upon receiving plaintiff's request to be transferred to an after-hours position, defendant attempted to reduce distraction to plaintiff by moving him to another office and giving him a noise cancelling headset. (Compl. ¶¶ 40, 46). Defendant was entitled to provide such an alternative reasonable accommodation under the ADA. See Reyazuddin, 789 F.3d at 415. Although plaintiff does allege he communicated that defendant's accommodations were not effective, his complaint does not allege that he requested any specific additional accommodations from defendant. (See Compl. ¶ 50). Instead, he merely asserts that "no other accommodations were provided." (Id.). Therefore, it is impossible for this court to infer from the facts alleged whether or not defendant "refused to make" the accommodations plaintiff suggests in his complaint, because plaintiff's complaint does not allege that he requested any further accommodations from defendant. See Wilson, 717 F.3d at 347 ("[A]n employer who fails to engage in the interactive process will not be held liable if the employee cannot identify a reasonable accommodation that would have been

possible."); Martinson, 104 F.3d at 687 (finding a general request for accommodations not actionable under the ADA).

Plaintiff argues whether the accommodations he proposed are reasonable is a factual question that must be resolved at summary judgment or at trial. For the reasons discussed above, the court disagrees. Consequently, plaintiff fails to state a claim for failure to accommodate a disability under the ADA.

4. Wrongful Termination in Violation of Public Policy

Finally, plaintiff alleges that he was wrongfully terminated in violation of public policy because Royals encouraged him to find ways to avoid having to go to court to testify pursuant to subpoena. (Compl. ¶¶ 14, 19, 26 107–11).

"Ordinarily, an employee without a definite term of employment is an employee at will and may be discharged without reason." Coman v. Thomas Mfg. Co., 325 N.C. 172, 175 (1989). However, "there can be no right to terminate such a contract for an unlawful reason or purpose that contravenes public policy. A different interpretation would encourage and sanction lawlessness, which law by its very nature is designed to discourage and prevent." Id. But see Kurtzman v. Applied Analytical Indus., Inc., 347 N.C. 329, 334 (1997) (holding exceptions to the employment at will doctrine "demand careful consideration and should be adopted only with substantial justification grounded in compelling considerations of public policy").

Public policy has been defined to be "the principle of law that holds no citizen can lawfully do that which has a tendency to be injurious to the public or against the public good." Johnson v. Mayo Yarns, Inc., 126 N.C. App. 292, 296, disc. review denied, 346 N.C. 547 (1997). The North Carolina Court of Appeals recognizes a limited public policy exception where plaintiff is discharged "in retaliation for her refusal to testify falsely or incompletely in the case referred to, and that part

12

of the order appealed from is reversed." Sides v. Duke Univ., 74 N.C. App. 331, 343 (1985), abrogated on other grounds by Kurtzman, 347 N.C. at 329.

Here, plaintiff alleges that Royals requested plaintiff try to get out of testifying in court by way of some alternative, such as submitting an affidavit. (Compl. ¶¶ 14, 19). Defendant requesting that plaintiff find the most time efficient manner to comply with a subpoena, such as by submitting an affidavit, is not in violation of North Carolina public policy because it is not encouraging plaintiff to testify falsely or incompletely. See Sides, 74 N.C. App. at 343. Therefore, plaintiff fails to state a claim for wrongful discharge in violation of public policy.

## CONCLUSION

Based on the foregoing, defendant's motion to dismiss (DE 24) is GRANTED. Plaintiff's claims are DISMISSED WITHOUT PREJUDICE for failure to state a claim. Because the deficiencies in plaintiff's complaint may be curable by amendment, the court grants plaintiff leave to file an amended complaint within **21 days** of the date of this order. In the event no amended complaint is filed by that time, the clerk is DIRECTED to enter final judgment closing this case based upon the decision herein.

SO ORDERED, this the 3rd day of January, 2019.

_____
LOUISE W. FLANAGAN
United States District Judge